PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TYRONE HOUSTON,

       Plaintiff,

 -v-                                                  13-CV-6594-FPG
                                                          DECISION AND ORDER

MICHAEL SHEAHAN, et al.,

       Defendants.

_____

## INTRODUCTION

*Pro se* Plaintiff Tyrone Houston ("Plaintiff"), an inmate confined at the Five Points Correctional Facility, brought this action seeking relief pursuant to 42 U.S.C. § 1983 ("§ 1983") based upon numerous alleged violations of his civil rights during his confinement at this facility. ECF No. 1. Before the Court is Defendants' motion for judgment on the pleadings regarding a number of Plaintiff's claims pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF No. 88. For the reasons that follow, Defendants' Motion for judgment on the pleadings is GRANTED.

## DISCUSSION

### I.    Plaintiff's Allegations

In his Complaint (ECF No. 1), Plaintiff asserts the following causes of action against Defendants: (1) the unconstitutional alteration of his concurrent sentences in violation of the state court's order; (2) deliberate indifference to his dental needs; (3) deliberate indifference to his medical needs with respect to his foot condition, including cancelling his bunionectomy; (4) the malicious alteration of Plaintiff's legal, vocational, educational, transfer, medical, and dental

1

files; and (5) implementing unconstitutional grievance proceeding policies. Plaintiff is seeking a monetary award and injunctive relief.

In their Rule 12(c) Motion, Defendants argue that: (1) Plaintiff's first cause of action concerning the length of his sentence is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) the second cause of action concerning his dental care should be dismissed for lack of personal involvement as to all Defendants apart from his dentist, Dr. Mewar; (3) the third cause of action concerning his bunion treatment should be dismissed for failure to allege a serious condition and/or lack of personal involvement; (4) the fourth cause of action for inaccurate prison records should be dismissed because Plaintiff does not have a constitutional right to accurate records; and (5) the fifth cause of action for the implementation of prison policies that encourage false or falsely over-charged misbehavior reports and the improper weighing of corrections officers' credibility during disciplinary proceedings against inmates should be dismissed because inmates do not have the constitutional right to be free from false reports and due process requires only "some evidence" of a violation. Plaintiff opposes the motion. *See* ECF Nos. 90, 93.

## II. Standard of Review

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that which governs a motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id*. Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* Determining whether a complaint meets the plausibility standard is "context-specific" and requires that the court "draw on its judicial experience and common sense." *Id.* at 679. "On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

### A. Alleged Sentence Alternation (First Cause of Action)

Plaintiff's first cause of action appears to allege that certain Defendants violated parole and court orders concerning his concurrent sentence. First, it is unclear from the Complaint how Plaintiff's sentence was altered, the circumstances under which it occurred, or whether any of these Defendants were personally involved in any unconstitutional conduct related thereto. Second, the United States Supreme Court has limited the scope of cognizable Section 1983 claims to claims that would not "necessarily imply the invalidity of his conviction or sentence" unless the prisoner could show that conviction or sentence had already been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Inasmuch as Plaintiff's challenge to his sentence is particularly unartful and ill-defined in his pleadings, it is not immediately clear whether this claim is barred by *Heck*, which extends to parole violation and revocation sentence determinations. *See Preiser v. Rodriguez*, 411 U.S. 475, 487–90, 500 (1973). However, because there is no allegation or indication that Plaintiff's sentence has been invalidated, the claim cannot proceed and this cause of action is therefore dismissed.

### B. Deliberate Indifference to Serious Medical Needs

A claim for denial of medical care rises to the level of a constitutional violation only where the facts alleged show that a defendant was deliberately indifferent to a plaintiff's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Ross v. Kelly*, 784 F. Supp. 35, 43-44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992). This standard has both an objective and subjective component. Plaintiff's medical needs must be objectively serious. "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.' " *Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (finding a serious dental condition where plaintiff alleged that he suffered extreme pain, deteriorated teeth, and the inability to eat properly). Plaintiff must also address the subjective component – that the prison officials were deliberately indifferent to a serious medical need. To address this, Plaintiff must adequately allege that the prison official had actual knowledge of plaintiff's serious medical needs, but was deliberately indifferent to that need. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003).

#### 1. Dental Condition (Second Cause of Action)

Plaintiff alleges that he suffered severe tooth pain, holes in his teeth, a broken tooth, and the inability to eat properly. He further alleges that he received no dental or medical treatments until he was examined by Dr. Mewar five months after his admission to the prison. Plaintiff states that Dr. Mewar told him at the time, "I'm not fixing multiple cavities today. It's Friday and I'm leaving early. You should have had it done when you were home. Get out. I'll call you later." ECF No. 1 at 10. When Plaintiff was called back to see Dr. Mewar two months later, Dr. Mewar attempted to remove five teeth, including Plaintiff's broken tooth and four other teeth

that were "solid" and causing him "no pain." ECF No. 1 at 11. Defendants Bailey and Schmelzle were present during this procedure. Plaintiff alleges that Dr. Mewar refused to fill his cavities unless he consented to the unnecessary removal of the five teeth and that Dr. Mewar subsequently filed a Tier II misbehavior report against Plaintiff.

Plaintiff also alleges that he was sent to Dr. Mewar a year later, in 2013, with an abscessed and broken tooth, which Dr. Mewar attempted to remove without offering medication for Plaintiff's pain and swelling. Plaintiff signed a refusal "form with reasons for not allowing defendant Mewar[] to extract additional teeth, in order to be provided Dental Treatment from an Oral Surgeon." ECF No. 1 at 12. Plaintiff alleges that he was then placed in keeplock in retaliation for "exercising his rights" by Defendants Canty, Bailey, Babcock, and O'Connor. ECF No. 1 at 12. Plaintiff asserts that although he was falsely documented as refusing treatment in January, May, and August 2013, he had merely refused the extraction of five additional teeth. Plaintiff also brings this claim against supervisory Defendants Fischer, Bellamy, Koenigsman, Sheahan, Thoms, Bannister, Hartman, Daleck, and Haimes for their alleged failure to remedy this wrongful conduct, their design and implementation of an unconstitutional policy, and their negligent supervision and failure to train. Defendants do not dispute that Plaintiff was suffering from a serious dental condition, but they assert that this claim should be dismissed for lack of personal involvement as to all Defendants, apart from Dr. Mewar, and that these Defendants were entitled to rely on Dr. Mewar's expertise.

It is well settled that personal involvement by the defendants accused of the constitutional deprivation is a prerequisite for liability under § 1983. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). Such involvement on the part of a supervisory official may be shown in one of several ways:

> (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir.2003) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson*, 347 F.3d at 435 (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Keitt v. N.Y. City*, 882 F. Supp. 2d 412, 444 (S.D.N.Y. 2011) (holding that "the fact that an official holds a supervisory position is, standing alone, insufficient to establish that official's liability for the acts of his subordinates").

Moreover, it is "well accepted in this Circuit that in general, supervisory prison officials may not be found liable for constitutional violations involving medical care where they reasonably relied on the opinions of prison medical staff." *Rodriguez v. McGinnis*, No. 98-CV-6031CJS, 2004 WL 1145911, at *18 (W.D.N.Y. May 18, 2004) (citing *Graham v. Wright*, No. 01 Civ. 9613 NRB, 2003 WL 22126764 at *1 (S.D.N.Y. Sep. 12, 2003) ("It is well established that supervisory officials are "generally entitled to delegate medical responsibility to facility medical staffs and are entitled to rely on the opinion of medical staff concerning the proper course of treatment."); *see Abdush–Shahid v. Coughlin*, 933 F.Supp. 168, 183 (N.D.N.Y. 1996) ("[S]upervisory officials are also generally entitled to delegate medical responsibility to facility medical staffs and are entitled to rely on the opinion of medical staff concerning the proper course of treatment.")

With respect to the named Defendants other than Dr. Mewar, the Court finds that Plaintiff has failed to allege any facts to indicate that these Defendants were personally involved in his

dental care or had any input in the medical decisions related to his dental treatment. These Defendants were entitled to rely on Dr. Mewar's dental opinion, and there are no allegations that they were aware of and disregarded an excessive risk to Plaintiff's health or safety. Therefore, the claim is dismissed against all named Defendants, with the exception of Dr. Mewar.

With respect to Defendant Dr. Mewar, Plaintiff alleges that Dr. Mewar maliciously delayed the performance of Plaintiff's necessary dental work and attempted to coerce him into the painful removal of healthy teeth. In the fourth cause of action, Plaintiff makes a vague and conclusory allegation that Dr. Mewar maliciously altered his dental records. ECF No. 1 at 23, ¶ 43. Plaintiff acknowledges that he refused treatment for these reasons and because he desired to be treated by an outside and unbiased oral surgeon. Defendants, however, have not moved to dismiss Plaintiff's dental care claims against Dr. Mewar, and, therefore, Plaintiff's deliberate indifference to dental condition claim against Dr. Mewar will proceed.

### 2. Foot Condition (Third Cause of Action)

Plaintiff alleges that he was examined by a "NYC DOC Podiatrist" in May 2010 who recommended that he be seen by an outside podiatrist because his prison-issued footwear was causing "gout, swelling, bunions and painful corns." ECF No. 1 at 16. Plaintiff was also issued a medical pass permitting him to wear work boots until he could be "examine[d] for orthopedic shoes and operation" to relieve his symptoms, including pain and difficulty walking and standing. ECF No. 1 at 16. In 2011, Plaintiff was issued a pass permitting him to wear sneakers, and he was recommended for treatment by an outside podiatrist. He was again recommended for outside treatment in 2013 and transported to the Elmira Correctional Facility where he was examined by Dr. Hater, who "informed Plaintiff of the dangers in having 'bunionactomy surgery' with gout and arthritis" and the long healing period after surgery. ECF No. 1 at 16.

Plaintiff brings a claim of deliberate indifference to his foot condition against Defendants Holm, Haimes, O'Neal, Daleck, and Sheahan "for deliberately disregarding [his] foot injuries [and] altering his 3/18/13 medical record to state that Plaintiff did not need to see an outside Podiatrist." ECF No. 1 at 17 (emphasis in original). Plaintiff further alleges that Defendants Yott, Gardner, and Hernandez fabricated a refusal form stating that Plaintiff had refused foot surgery from an outside medical provider and placed Plaintiff in keeplock in retaliation "for exercising his right to attend his mandatory Law Library Special Access" in August 2015. ECF No. 1 at 17. Plaintiff also brings this claim against supervisory Defendants Fischer, Bellamy, Koenigsman, Sheahan, and Daleck for their failure to remedy this wrong, the design and implementation of the policy underlying the unconstitutional conduct, and their negligent supervision of Haimes, Yott, Gardner, and Hernandez.

Although Defendants initially state that they are not moving to dismiss this claim against Defendant Haimes, they assert in the alternative that this claim should be dismissed in its entirety because Plaintiff's bunion condition did not constitute a serious medical condition. The Court agrees. Even accepting as true Plaintiff's allegations that he experienced extreme swelling, painful corns, and difficulty walking and standing, his complaints concerning his foot injuries do not demonstrate the requisite urgency leading to death, degeneration or extreme pain. Indeed, "the case law holds that prisoner complaints about bunions or other foot problems do not establish the objective prong of the deliberate indifference standard." *Brown v. DeFrank*, No. 06 CIV 2235 AJP, 2006 WL 3313821, at \*21 (S.D.N.Y. Nov. 15, 2006) (holding that prisoner's claims that defendants unreasonably delayed referral for needed podiatry services; intentionally cancelled and unreasonably delayed his bunion surgery; and intentionally denied him a referral for prescription footwear did not state a deliberate indifference claim). It has been repeatedly

held that such conditions do not constitute a serious medical condition in the context of deliberate indifference to medical need claims, including the refusal to provide high performance footwear to an inmate with chronic ankle arthritis, *see Alston v. Howard*, 925 F. Supp. 1034, 1040 (S.D.N.Y. 1996), and a failure to prescribe orthopedic shoes and dressing feet too tightly after bunion surgery, *see Cole v. Scully*, No. 93 CIV. 2066 (LAP), 1995 WL 231250, at *6 (S.D.N.Y. Apr. 18, 1995).

Moreover, "disagreement over or delays in treatment do not create a constitutional claim." *Brown*, No. 06 CIV 2235 AJP, 2006 WL 3313821, at *21. Consequently, Plaintiff's deliberate indifference claims relating to his bunions are dismissed in their entirety as to all Defendants.

### C. Alterations to Prison Record (Fourth Cause of Action)

Plaintiff asserts that a number of Defendants have made malicious and false alterations to his prison record, including his medical, dental, educational, sentence, transfer, and disciplinary files. Defendants contend that this claim should be dismissed for the lack of personal involvement by Defendants, and further, because prisoners do not have a constitutional right to accurate records.

In *Paine v. Baker*, 595 F.2d 197, 201 (4th Cir. 1979), the Fourth Circuit found that a prison inmate may have a limited constitutional protection under the Due Process Clause from false information concerning his prior criminal history or disciplinary record in his file. To sustain such a claim, a plaintiff must establish: (1) the existence of false information regarding his prior criminal or disciplinary history; (2) a probability that the information will be relied on in a constitutionally significant manner; and (3) that, as a jurisdictional predicate, he requested that the false information be expunged, but prison officials declined to do so. *See Foster v. New*

*York City Prob. Dep't*, No. 11-CV-4732 KAM JMA, 2013 WL 1342259, at *4 (E.D.N.Y. Mar. 7, 2013), report and recommendation adopted, No. 11-CV-4732 KAM JMA, 2013 WL 1305775 (E.D.N.Y. Mar. 30, 2013) (citing *Paine*, 595 F.2d at 201 and *Antonucci v. David*, No. 9:03CV653(FJS/DEP), 2006 WL 2265028, at *4 (N.D.N.Y. Aug. 7, 2006)).

Here, Plaintiff has failed to establish that any falsifications in his prison files were or would be relied upon in an unconstitutionally significant manner. *See e.g.*, *Pugliese v. Nelson*, 617 F.2d 916 (2d Cir. 1980) (holding prisoners' interests in avoiding classifications which precluded or delayed benefits such as furloughs and transfers did not entitle them to due process protection). Plaintiff's conclusory assertions that he was deprived of access to certain prison privileges or freedoms as a result of altered records are unavailing and fail to implicate any unconstitutional significance. "[A] prisoner's mere expectation of benefits . . . does not amount to a statutory or constitutional entitlement sufficient to trigger due process protections." *Id.* at 925 ("We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right.")

To the extent that Plaintiff is challenging the alleged filing of false misbehavior reports in his prison records, it is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report" absent any additional factors, "such as retaliation against the prisoner for exercising a constitutional right." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *see also Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"). No specific retaliation allegations exist here regarding misbehavior reports, as discussed further in Section E of this Order.

As a result, Plaintiff's claims concerning the alteration of his prison records are dismissed as to all Defendants for failure to state a claim upon which relief could be granted.

D.     **Denial of the Right to Access the Courts**

Plaintiff appears to allege violations of his right to access the courts based on Defendants' destruction of his legal documents, including his trial minutes and medical records, and denying or discouraging Plaintiff from visiting the law library and using his "Law Library Special Access" privileges. ECF No. 1 at 17, 22, 23. Defendants have not specifically addressed these allegations in their motion. However, under 28 U.S.C. § 1915A, the court may dismiss *sua sponte* any claim in which a prisoner seeks redress from a governmental entity, or officer or employee of a governmental entity, that is "frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief."

A denial of access to the courts claim must contain non-conclusory allegations demonstrating that: (1) Defendants acted deliberately and maliciously and (2) he suffered an actual injury. *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 210 (N.D.N.Y. 2015) (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)). Moreover, a plaintiff must show that the actual injury suffered is traceable to the challenged conduct of prison officials. Actual injury is not shown unless Plaintiff establishes that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials. *Lewis*, 518 U.S. at 351-52. In other words, the pleadings must allege how the destruction of his legal documents prejudiced his "ability to seek redress from the judicial system." *Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995). The Court finds that Plaintiff has failed to allege any actual injury suffered by challenged

conduct, and his denial of access to the courts claims, to the extent that they have been alleged, are therefore dismissed as to all Defendants.

### E. Retaliation and unwritten policies claims (Fifth Cause of Action)

To the extent that Plaintiff has interspersed retaliation claims throughout the Complaint, it is well settled that such claims cannot be stated "in wholly conclusory terms" but must instead contain factual allegations that are "specific and detailed." *Friedl v. City of New York*, 210 F.3d 79, 86 (2d Cir. 2000) (internal quotation marks omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("A complaint of retaliation that is wholly conclusory can be dismissed on the pleadings alone."); *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987). Further, a retaliation claim must contain the following factual allegations: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks omitted).

In each cause of action, Plaintiff accuses Defendants of perpetrating the alleged constitutional violation in retaliation for his filing of grievances. Each allegation, however, is stated in wholly conclusory terms or fails to assert a causal connection between the protected speech and the alleged adverse action, or both. Consequently, Plaintiff's retaliations claims are dismissed as to all Defendants.

Plaintiff's final cause of action also alleges that Defendants Fischer and Sheahan implemented unconstitutional prison policies that encourage false or falsely over-charged misbehavior reports, the improper weighing of corrections officers' credibility during

disciplinary proceedings, and overcharging disciplinary infractions in order to assess a $5.00 surcharge for Tier II and Tier III-level findings of guilt. The Court agrees with Defendants that, as stated above, Plaintiff has not alleged circumstances giving rise to a constitutionally guaranteed immunity from false misbehavior reports. With respect to the $5.00 surcharge, the Second Circuit has held that "any incentive to find an inmate guilty or to upgrade the violation that might result from the surcharge is too remote and attenuated to deprive the inmates of due process." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (finding "no showing that a single hearing officer was under the impression there would be any personal gain from charging or convicting an inmate of a Tier II or III violation.").

With respect to the weighing of witness credibility during disciplinary hearings, an inmate is certainly entitled to have the hearing conducted by an impartial hearing officer. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 570-71 (1974); *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir. 1990) ("an impartial decisionmaker is one who, inter alia, does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen"). However, Plaintiff's claim is wholly conclusory and devoid of any factual allegations to suggest any partiality by the prison hearing officers. Judicial review of written prison disciplinary findings under the Due Process Clause is limited to determining whether the disposition is supported by "some evidence." *Whitley v. Miller*, 57 F. Supp. 3d 152, 158 (N.D.N.Y. 2014) (quoting *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004)) (internal quotation marks omitted). Here, Plaintiff makes only general allegations concerning the prison's procedure of adjudicating disciplinary charges and states no facts to support his claim that the hearing officers' credibility assessments are unreliable or their determinations are otherwise unsupported by some evidence. Consequently, Plaintiff's fifth cause of action is dismissed in its entirety.

F. Plaintiff's Motion for Counsel and Sanctions

Plaintiff seeks sanctions against Defendants' attorney, Assistant Attorney General Gary Levine, based on his allegation that Defendants' Motion for Judgment on the Pleadings is nothing more than a delaying tactic ECF No. 95. Since the Court has granted Defendants' Motion for Judgment on the Pleadings, Plaintiff's motion for sanctions is meritless, and is denied in all respects.

Plaintiff also seeks the appointment of counsel. ECF No. 94. That application is also denied. There is no constitutional right to appointed counsel in civil cases. Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *See, e.g., Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988). The assignment of counsel in civil cases is within the trial Court's discretion. *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984). The Court must consider the issue of appointment carefully, because "every assignment of a volunteer lawyer deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989). In determining whether to assign counsel, the Court considers several factors, including whether the indigent's claims seem likely to be of substance; whether the indigent is able to investigate the facts concerning his claim; whether the legal issues are complex; and whether there are special reasons why the appointment of counsel would be more likely to lead to a just determination. *See Hendricks v. Coughlin*, 114 F.3 390, 392 (2d Cir. 1997); *Hodge v. Police Officers,* 802 F.2d 58 (2d Cir. 1986).

The appointment of counsel is not warranted in this case. The remaining claim in this case is not complex, and from reading Plainitff's submissions, he is articulate and has demonstrated the ability to adequately present his own claims. In addition, there are no special

14

reasons that would favor the appointment of counsel. It remains Plaintiff's responsibility to either retain counsel, or to press forward with this action *pro se*.

## CONCLUSION

Defendants' Motion for judgment on the pleadings (ECF No. 88) is GRANTED, and Plaintiff's Motions for the Appointment of Counsel and for Sanctions (ECF Nos. 94, 95) are DENIED. The sole remaining cause of action in this case is Plaintiff's claim of deliberate indifference to his serious dental conditions, and the sole remaining Defendant in that cause of action is Dr. Mewar. All other causes of action and other named Defendants are dismissed with prejudice.

By separate order, this case will be referred to a United States Magistrate Judge for the supervision of all pretrial matters on the remaining cause of action.

IT IS SO ORDERED.

DATED: August 9, 2017
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court